# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

STEVEN C. JONES,                    :

         Petitioner,                :        Case No. 3:08cv147

    vs.                             :        District Judge Thomas M. Rose
                                             Magistrate Judge Sharon L. Ovington
TIMOTHY BRUNSMAN,                   :
    WARDEN,

                                    :
         Respondent.
                                    :

# REPORT and RECOMMENDATIONS[1]

         This matter is before the Court on Steven C. Jones' petition for a writ of

habeas corpus (Doc. #2); Respondent's return of writ (Doc. #14); Petitioner's

reply (Doc. #17); and the record as a whole.

## FACTUAL AND PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

         On Jones' direct appeal from his state court conviction, the Court of

Appeals for Montgomery County, Ohio, set forth the following presumptively

correct findings of fact[2] regarding this case:

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

[2]*See* 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6ᵗʰ Cir. 1998), *cert.
denied,* 527 U.S. 1040 (1999).

Anthony and Connie Ogleton and some friends gathered at the Ogleton home in Dayton, Ohio, on the evening of August 22, 2005.  The friends included Jones and his girlfriend, Trudy Weaver.  The friends had been smoking crack cocaine together most of the evening when an argument erupted over the use of Weaver's car and cellular phone to obtain more crack.  Weaver was angry because an attempt to procure more crack was unsuccessful and because the friends were apparently unable to compensate her for the use of her car and phone.  Connie Ogleton lost patience with Weaver and told her to leave the house.  Connie threatened Weaver, but Anthony Ogleton prevented Connie from approaching Weaver by holding her around the waist.  Jones struck Connie and, when Anthony came to her aid, he was struck as well.  Both were knocked to the floor.

At this point, different versions of the events emerged.  The state's evidence was that Jones pulled a knife and stabbed Anthony Ogleton.  Weaver's testimony supported this version because she claimed to have seen Jones with the green-handled knife that he admittedly used in the stabbing earlier in the day.  Although Jones did not testify, police officers' testimonies recounted his claim that Anthony had pulled the knife, but that Jones had immediately grabbed it from Anthony and stabbed him with it.

Although Anthony managed to force Jones from his home using a cane, Anthony died from his wounds a short time later.  Jones fled from the house with Weaver in Weaver's car.

The next day, Jones turned himself into the police.  First, he told the police that Anthony had produced the knife during the altercation and that Anthony had fallen on it.  Later, he claimed that he had taken the knife from Anthony and used it to stab him once or twice.  He described the knife as having a green handle and told

-2-

> them how he had disposed of the knife near a lake.  The
> police did not recover the knife.  During their search of
> the Ogleton house, the police found a knife between the
> cushions of the couch, but its tip was broken and it was
> inconsistent with Anthony's stab wounds.

*State v. Jones*, No. 21522, 2007 WL 706632, at *1 (Ohio Ct. App. Mar. 9, 2007).

(Doc. #7, Exh. 10 at 2-3).

Jones was indicted in 2005 by the Grand Jury of Montgomery County,

Ohio, on one count of felony murder as defined in Ohio Rev. Code § 2903.02(B);

one count of felonious assault by serious harm as defined in Ohio Rev. Code §

2903.11(A)(1); one count of felonious assault by deadly weapon as defined in

Ohio Rev. Code § 2903.11(A)(2); and one count of tampering with evidence as

defined in Ohio Rev. Code § 2921.12(A)(1).  (Doc. #7, Exh. 1).  Jones entered a

plea of not guilty.  (Doc. #7, Exh. 2).  A jury found Jones guilty as charged.

On March 13, 2006, the trial court sentenced Jones to 15 years to life for

murder, eight years for each count of felonious assault, and five years for

tampering with evidence.  The trial court merged the felonious assault sentences.

The sentences for murder and tampering with evidence were to be served

consecutively to each other and to the merged sentences for felonious assault,

with the total sentence being 28 years to life.  *State v. Jones*, No. 2005 CR 03619

(Ohio Ct. Cmn. Pleas Mar. 13, 2006).  (Doc. #7, Exh. 3).

On March 16, 2007, Jones, through trial counsel, filed a notice of appeal in

the Ohio Court of Appeals. (Doc. #7, Exh. 4). Although the State moved to dismiss for failure to file the record in a timely manner, the appellate court denied that motion when Jones submitted the complete record. (Doc. #7, Exhs. 5-7). Jones, through counsel, raised the following assignments of error:

> A. The trial court erred in not allowing the lesser included offenses to be part of the jury instructions.
>
> B. The trial court erred in not merging the felonious assault charges with the murder charge.

(Doc. #7, Exh. 8). On March 9, 2007, the Court of Appeals overruled Jones' assignments of error and affirmed the judgment. *Jones*, 2007 WL 706632, at *2, *3. (Doc. #7, Exh. 10).

Jones filed a *pro se* appeal to the Ohio Supreme Court, elaborating on the constitutional significance of the two issues previously presented to the Ohio Court of Appeals, as follows:

> Proposition of Law No. I: The refusal to provide a jury instruction on a lesser included offense where the evidence clearly warrants it deprives a defendant of due process of law and a fair trial.
>
> Proposition of Law No. II: Where the same conduct constitutes two or more offenses with no separate animus, it violates double jeopardy protection to sentence a defendant to consecutive terms of incarceration therefor.

(Doc. #7, Exhs. 11, 12 at 3, 4). The State requested that the Court decline jurisdiction. (Doc. #7, Exh. 13). On July 25, 2007, the Ohio Supreme Court

denied Jones leave to appeal, dismissing the appeal "as not involving any

substantial constitutional question." *State v. Jones*, 870 N.E.2d 733 [table], 2007-

Ohio-3699 (Ohio July 25, 2007).  (Doc. #7, Exh. 14).

On April 23, 2007, Jones, acting *pro se*, moved to reopen his direct appeal

pursuant to Ohio App. R. 26(B), claiming that his appellate counsel was

ineffective for failing to raise the following issues on appeal:

> Appellant's right to due process and to trial by jury
> were violated by the enhancement of his sentence by
> judicial fact finding of facts not alleged in the
> indictment where the enhanced sentenced exceeded the
> statutory maximum in the absence of such additional
> fact finding.
>
> Appellant's right to a fair trial and to effective assistance
> of counsel under the Constitution were violated where
> counsel abrogated Appellant's right to testify in his own
> behalf.
>
> Appellant was deprived of the effective assistance of
> counsel where counsel failed to timely assert the
> affirmative defense of self defense which enabled the
> trial court to refuse to so instruct the jury.

(Doc. #7, Exh. 15).  The State opposed the application.  (Doc. #7, Exh. 16).  On

July 17, 2007, the Court of Appeals denied the application.  *State v. Jones*, No.

21522 (Ohio Ct. App. Jul. 17, 2007).  (Doc. #7, Exh. 17).

Jones timely appealed to the Ohio Supreme Court, raising the following

propositions of law:

> Where a sentence in a criminal case is enhanced beyond

the statutory maximum based upon facts not alleged in the charging instrument, or proven beyond a reasonable doubt to a jury, it violates the Fifth, Sixth and Fourteenth Amendment rights of the Defendant and is tantamount to an acquittal.

Where a trial court imposes consecutive terms of incarceration in the absence of statutory authority, Appellant's due process and equal protection of the law rights are violated.

Appellant's sentence violated his rights under the Ex Post Facto Clause of the U.S. Constitution by sentencing Appellant to a term of incarceration which exceeded the maximum penalty available under the statutory framework at the time of the offense.

Where trial counsel abrogated Appellant's right to testify in his own behalf, due process, the right to a fair trial and effective assistance of counsel are violated.

Where trial counsel failed to timely assert the affirmative defense of self defense which enabled the trial court to decline the assertion and, refuse to instruct the jury as to self defense and defense of others, violated Appellant's right to due process and fair trial and the effective assistance of counsel.

(Doc. #7, Exhs. 18, 19).  On October 24, 2007, the Ohio Supreme Court dismissed

the appeal as not involving any substantial constitutional question.  *State v. Jones*,

875 N.E.2d 104 [table], 2007-Ohio-5567 (Ohio Oct. 24, 2007).  (Doc. #7, Exh. 20).

On April 29, 2008, Jones filed his Petition for Writ of Habeas Corpus in this

Court, raising the following grounds for relief:

**GROUND ONE:**  The refusal to provide a jury instruction on a lesser included offense where the

-6-

evidence clearly warrants it deprives a defendant of due process of law and a fair trial.

**Supporting Facts**:  The trial court's refusal to issue the requested and pertinent jury instruction relevant to an affirmative defense, (i.e. deciding the issue in favor of the prosecution) is tantamount to interfering with the burden of proof, thereby removing the affirmative defense from consideration of the jury and depriving the defendant of due process and a fair trial.

**GROUND TWO:**  Where the same conduct constitutes two or more offenses with no separate animus, it violates double jeopardy protection to sentence a defendant to consecutive terms of incarceration.

**Supporting Facts**:  Mr. Jones has the constitutional right to due process; freedom from excessive punishment; double jeopardy; and the right for the merger of allied offenses of similar import with no separate mens rea or animus.

**GROUND THREE:**   Ineffective assistance of appellate counsel for failing to raise issues of a constitutional magnitude.

**Supporting Facts**:  Appellate counsel was ineffective for failing to raise issues on appeal that were not only relevant to the issues he raised on appeal, but he also failed to raise issues of sentencing that were at the forefront of a constitutional debate not only in the state courts but in the federal courts as well.

**GROUND FOUR**:  Where trial counsel abrogated appellant's right to testify in his own behalf, due process, the right to a fair trial and effective assistance of counsel are violated.

**Supporting Facts**:  Mr. Jones had an unqualified and personal right to testify in his own behalf, to confront

his accusers and offer rebuttal testimony and trial counsel's abrogation of that right was clearly ineffective assistance of counsel and deprived him of due process and a fair trial.

**GROUND FIVE**:  Where trial counsel failed to timely assert the affirmative defense of self defense which enabled the trial court to decline the assertion and, refuse to instruct the jury as to self defense and defense of others, violated Petitioner's right to due process, a fair trial and the effective assistance of counsel.

**Supporting Facts**:  Trial counsel had an affirmative duty in this case to prepare and present the valid claims of an affirmative defense that cannot be excused by trial tactics, depriving the Petitioner of due process, a fair trial and the assistance of counsel.

**GROUND SIX**:  Petitioner's sentence is void under the 5th, 6th and 14th Amendments of the U.S. Constitution and Art. I, Sec. 10 of the Ohio Constitution, violating Petitioner's due process right to Notice of the charges and the Opportunity to defend as well as the right to proof beyond a reasonable doubt by jury determination.

**Supporting Facts**:  The trial court exceeded the maximum sentence by way of using judicial factfindings that were not presented in a charging instrument, were not presented to a jury for determination by proof beyond a reasonable doubt, depriving the Petitioner of the opportunity to defend against the accusations and thereby lowering the prosecution[']s burden of proof.

**GROUND SEVEN**:  The trial court violated Petitioner's right to due process and equal protection of the law by imposing consecutive terms of incarceration absent the statutory authority.

**Supporting Facts**:  The trial court was without statutory authority and lacked subject matter jurisdiction to

impose any sentence but a concurrent sentence, after the Ohio Supreme Court severed and excised in their entirety the Ohio Statutes relevant to consecutive sentence.

**GROUND EIGHT**:  Petitioner's sentence violated his rights under the Ex Post Facto Clause of the U.S. Constitution when the trial court sentenced him to a term of incarceration which exceeded the maximum penalty available under the statutory framework at the time of the offense.

**Supporting Facts**:  The Ex Post Facto Clause prohibits the state from retroactively applying a change in the law that increases a criminal penalty.

(Doc. #2).  In his return of writ, Respondent argues that Petitioner's first, second, third and sixth grounds for relief lack substantive merit; that the fourth, fifth, seventh and eighth grounds for relief have been procedurally defaulted and/or waived; and that the seventh and eighth grounds for relief additionally lack merit and any ineffective assistance of counsel claim based thereon has been procedurally defaulted.  (Doc. #14).

## APPLICABLE LAW

### The Antiterrorism and Effective Death Penalty Act ["AEDPA"][3]

A federal court may consider a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the AEDPA,

---

[3]Codified in large part at 28 U.S.C. § 2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

a writ of habeas corpus may not issue with respect to any claim adjudicated on

the merits in state court unless the adjudication "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or was

based on an unreasonable determination of the facts in light of the evidence

present in the state court proceedings.  28 U.S.C. § 2254(d)(1); *see also Williams v.*

*Taylor*, 529 U.S. 362, 402-03 (2000) (O'Connor, J.).  The phrases "contrary to" and

"unreasonable application" have independent meaning:

> A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule
> different from the law set forth in [Supreme Court]
> cases, or if it decides a case differently that we have
> done on a set of materially indistinguishable facts.  The
> court may grant relief under the "unreasonable
> application" clause if the state court correctly identifies
> the governing legal principle from [Supreme Court]
> decisions but unreasonably applies it to the facts of a
> particular case.  The focus on the latter inquiry is
> whether the state court's application of clearly
> established federal law is objectively unreasonable, and
> . . . an unreasonable application is different from an
> incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citations omitted); *see also Broom v. Mitchell*,

441 F.3d 392, 398 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007).

"A decision is an 'unreasonable application' of clearly established Supreme

Court law if a 'state court correctly identifies the governing legal principle from

[the Supreme Court's] decisions but unreasonably applies that principle to the

facts of [a] prisoner's case.'" *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir.) (quoting in part *Williams*, 529 U.S. at 413) (brackets in original), *cert. denied*, ___ U.S. ___, 129 S. Ct. 216 (2008). "An unreasonable application of federal law is one that is 'objectively unreasonable' and not merely incorrect." *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir.) (citation omitted), *cert. denied*, 552 U.S. 961 (2007). Thus, "[a] federal habeas court may not find a state adjudication to be 'unreasonable' 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001).

Where a state court has not articulated its reasons for rejecting a convicted criminal's grounds for appeal, a federal court considering that individual's subsequent habeas petition should "focus on the result of the state court's decision" to determine whether that decision is contrary to or unreasonably applies clearly established United States Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented. *Stovall*, 212 F.3d at 943 n.1. Such independent review, while "not a full, de novo review of the claims," nonetheless "remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943.

For purposes of habeas review, a state court's determinations of factual issues are presumed correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). That deference extends to the state court's credibility assessments, *see Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001), and to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). "Indeed, the presumption applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). The same presumption applies to state appellate courts' findings of fact made on review of the state trial record. *Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

### Procedural Default

Before a federal court will consider a state prisoner's claims on habeas corpus review, he ordinarily first must have exhausted the remedies available in the courts of the custodial state. 28 U.S.C. §§ 2254(b), (c); *see Franklin v. Rose*, 811 F.2d 322 (6th Cir. 1987). A state defendant with federal constitutional claims therefore must fairly present those claims to the state's highest court for

consideration before raising them in a federal habeas corpus action.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To be considered to have been fairly presented to the state courts, a federal habeas claim must be based on the same facts and the same legal theory raised before the state courts.  *Franklin*, 811 F.2d at 325.  Accordingly, a federal habeas petitioner must have presented his claim to the state courts as a federal constitutional issue and not simply as an issue arising under state law, in order to have preserved that claim.  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees*, 822 F.2d 1418, 1420-24 (6th Cir. 1987).

If a defendant fails to present the state court reviewing his conviction with his federal claims in accordance with that state's established procedural rules, and if the final state court addressing that defendant's claims holds that such procedural default precludes further consideration of such claims, the federal courts also may not consider the merits of those claims.  *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125-29 (1982).  Such procedural bars may be imposed for failing to follow state procedural rules during pretrial, trial, or on appeal.  *See id.*  Where a procedural default prevents a habeas corpus petitioner from presenting one or more of his claims to the state courts, then, he usually may obtain federal review of such claims only by demonstrating cause for the procedural default and actual prejudice resulting from the alleged

constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at
129.

The United States Supreme Court has recognized "a narrow exception to
the cause requirement" only in those cases implicating "fundamental
miscarriages of justice" – *i.e.*, "where a constitutional violation has 'probably
resulted' in the conviction of one who is 'actually innocent' of the substantive
offense," and as to claims of capital sentencing error.  *Dretke v. Haley*, 541 U.S.
386, 393 (2004) (citing *Murray*, 477 U.S. at 496; *Sawyer v. Whitley*, 505 U.S. 333
(1992)).

When a state alleges that a federal habeas claim is precluded by procedural
default, a four-part analysis is required.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th
Cir. 1986).  First, the district court must determine that the petitioner failed to
comply with a state procedural rule that is applicable to the petitioner's claim.  *Id.*
Second, the court must decide whether the state courts actually enforced the state
procedural sanction.  *Id.*  Third, the court must decide whether the state
procedural forfeiture is an "adequate and independent" state ground on which
the state may rely to foreclose review of a federal constitutional claim.  *Id.*  Once
the court has determined that a state procedural rule was not complied with and
that such rule constitutes an adequate and independent state ground, the
petitioner then must demonstrate "cause" for his failure to follow the procedural

rule and actual prejudice stemming from the alleged constitutional error.  *Id.*

**Ineffective Assistance of Counsel**

To demonstrate that his counsel's performance was constitutionally ineffective, a petitioner must show that: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court may dispose of an ineffective assistance of counsel claim by finding that the petitioner made an insufficient showing on either ground.  *See id.* at 697.

Under the first prong of the *Strickland* test, a petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *See id.* at 688.  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct.  *Id.* at 689.  In determining whether or not counsel's performance was deficient, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *See id.*.

In order to satisfy the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different.  *See id.* at 694. A showing by the petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard.  *See id.* at 693.  By the same token, however, a petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding, in order to establish prejudice.  *See id.*  A petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors."  *See id.* at 695.  The *Strickland* test also applies to challenges to counsel's effectiveness on appeal.  *Evitts v. Lucey*, 469 U.S. 387 (1985).

## ANALYSIS

### Ground 1 - Denial of Lesser Included Offense Instruction

As his first ground for relief, Petitioner asserts that the trial court violated his rights to due process and a fair trial by failing to instruct the jury hearing his case on lesser-included offenses – specifically, those of voluntary manslaughter and aggravated assault.  (*See* Doc. #2 at 6).[4]  Respondent counters that existing

---

[4]Although the Petition filed in this Court does not identify the exact nature of the lesser-included offenses as to which Jones purports that a charge should have been given, Petitioner's state court appeal targeted the trial court's refusal to give requested instructions on voluntary manslaughter and aggravated assault. *See Jones*, 2007 WL 706632, at *2.  (Doc. #7, Exh. 10 at 3-4). Respondent's return of writ presumes that Petitioner here challenges that same omission (*see* Doc. #14 at 12), and Petitioner's reply confirms that Ground One relates to the omitted voluntary manslaughter and aggravated assault jury charges.  (Doc. #17 at 4).

law does not require a lesser-include offense charge in non-capital cases such as Petitioner's. (Doc. #14 at 12-15).

In *Beck v. Alabama*, 447 U.S. 625 (1980), the United States Supreme Court held that in certain situations, a defendant in a capital case has a constitutional right to have the jury instructed on lesser-included offenses. *Id.* at 627, 638. In that limited context, then, a lesser-included non-capital offense instruction is required if supported by the evidence. *Id.* But the Court in *Beck* expressly reserved decision on the issue of "whether the Due Process Clause would require the giving of such instructions in a non-capital case." *Id.* at 638 n.14.

The United States Court of Appeals for the Sixth Circuit subsequently confronted that issue in *Bagby v. Sowders*, 894 F.2d 792 (6th Cir.)(*en banc*), *cert. denied*, 496 U.S. 929 (1990). The Court there refused to extend *Beck* to the non-capital context on federal habeas corpus review of a state conviction, reasoning as follows:

> It appears to us that the Supreme Court's opinion in *Beck* is grounded upon Eighth Amendment concerns, rather than those arising from the Due Process Clause of the Fourteenth Amendment. If we are correct in that assessment, then we are not required to extend *Beck* to noncapital cases. Instead, we must determine whether the error asserted by [the petitioner] is of the character or magnitude which should be cognizable on collateral attack. Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of

-17-

> fair procedure? (citation omitted).  Experience tells us that it is not.
>
> Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits.  *See, e.g.*, *Chavez v. Kerby*, 848 F.2d 1101 (10th Cir. 1988); *Perry v. Smith*, 810 F.2d 1078 (11th Cir. 1987); *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985); *Nichols v. Gagnon*, 710 F.2d [1267, ] 1269 [(7th Cir. 1983), *cert. denied*, 466 U.S. 940 (1984)]; James v. Reese, 546 F.2d 325 (9th Cir. 1976); *DeBerry v. Wolff*, 513 F.2d 1336 (8th Cir. 1975); *but cf. Vujosevic v. Rafferty*, 844 F.2d 1023 (3d Cir. 1988).

*Id*. at 796-97.

Since then, the Sixth Circuit has reiterated that position on more than one occasion.  *See, e.g, Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001), *cert. denied*, 535 U.S. 975 (2002) ("the Constitution does not require a lesser-included offense instruction in non-capital cases") (citing *Bagby*, 894 F.2d at 795-97); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003) ("failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure'") (citing *Bagby*, 894 F.2d at 797).  Since explicitly declining to address that issue in *Beck, supra* at 638 n.14, however, the United States Supreme Court has provided no further guidance as to whether the failure to give a lesser-included offense instruction in a non-capital case violates the Due Process Clause.

In the absence of a Supreme Court decision on that issue, the state appellate court's decision affirming the trial court's refusal to instruct Jones' jury on lesser degrees of murder and assault is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.  *See Tegeler v. Renico,* 253 F. App'x 521, 525 (6th Cir. 2007) (where an open question exists in Supreme Court jurisprudence as to a particular issue of law, no violation of "clearly established" federal law as determined by the Supreme Court can be shown).

Significantly, both the trial court and the state appellate court also found that the evidence in Petitioner's case would not support charges of manslaughter or aggravated assault.  In upholding the trial court's refusal to give the requested lesser-included offense instructions, the Ohio Court of Appeals considering Petitioner's direct appeal stated as follows:

> The pertinent difference between the definitions of felony-murder and voluntary manslaughter and the definitions of felonious assault and aggravated assault is that with voluntary manslaughter and aggravated assault, the person acts "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force."  [Ohio Rev. Code §§] 2903.03(A); [ ] 2903.12(A).

> Jones claims that "the use of deadly force by Mr. Ogleton was enough to provoke a response of Mr. Jones taking the knife away and responding" and that he

suffered "serious emotional stress brought on by reasonable provocation."  The trial court concluded, however, that the initial altercation that sparked the melee occurred between the two women and that being incited by the actions of one person, *i.e.*, Connie Ogleton, did not justify sudden passion or rage toward another person, *i.e.*, her husband.  The court further concluded that Jones had been the aggressor, knocking the Ogletons to the floor, and that he had not availed himself of the opportunity to leave rather than to escalate the situation. Thus, the court refused to give instructions on voluntary manslaughter, aggravated assault, or the self-defense instruction that was belatedly requested by the defense.  Jones' appeal does not address the self-defense instruction.

We agree with the trial court's conclusion that, even construing the evidence in the light most favorable to Jones, the evidence could not reasonably support a conclusion that Anthony Ogleton's actions had provoked Jones to stab him. Connie and Weaver began the altercation, and it turned violent only when Jones hit the Ogletons.  Jones did not leave the Ogletons' house after being asked to do so.  Under these facts, the trial court's denial of the requested instructions was sound. Moreover, even if Anthony had produced the knife initially, as Jones claimed, there was no evidence that Anthony brandished the knife aggressively or did anything other than request that Jones and Weaver leave.  Thus, the court would have properly concluded on this scenario that  the alleged provocation was not reasonably sufficient to justify the use of deadly force.

*Jones*, 2007 WL 706632, at *2.  (Doc. #7, Exh. 10 at 3-4).  (*See* Doc. #9, Trial

Transcript Vol. IV at 519-21, 572-73).

Petitioner has not demonstrated that such findings are faulty.  As such, in

the absence of evidence of serious provocation by the victim, the trial court's

refusal to instruct the jury on the lesser-included offenses of voluntary manslaughter and aggravated assault does not amount to a defect so fundamental as to implicate a complete miscarriage of justice. This is yet another reason why Petitioner's first stated ground does not warrant habeas corpus relief.

**Ground 2 - Double Jeopardy Implications of Consecutive Sentences**

Petitioner's second ground for relief asserts that the murder and felonious assault charges brought against him constitute allied offenses of similar import, meaning that his conviction on both such offenses violates the Constitution's guarantee against double jeopardy. (Doc. #2 at 7). Respondent, however, contends that Ohio's statutory scheme as to those crimes does not offend the Double Jeopardy Clause. (Doc. #14 at 15-18).

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. That guarantee was made applicable to the states through the Fourteenth Amendment,[5] and protects against not only multiple trials but also "multiple punishments for the same offense." *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).

With regard to federal crimes, the Double Jeopardy Clause has been interpreted to prohibit multiple prosecutions for a single act unless that act can be

_____

[5]*See Benton v. Maryland,* 395 U.S. 784, 794 (1969).

prosecuted and punished under different statutory provisions that require proof of different elements. *Blockburger v. United States,* 284 U.S. 299 (1932). The test for determining whether offenses involve the same elements examines "whether each [statutory] provision requires proof of a fact which the other does not." *Id.* at 304.

"Because the substantive power to prescribe crimes and determine punishment is vested with the legislature," however, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). The *Blockburger* test therefore is not dispositive as to state prosecutions if a state legislature has evidenced its intent to authorize cumulative punishments. *Id.* at 499 n.8. When the same act or transaction violates two distinct statutory provisions, multiple charges and punishments in a single prosecution do not violate double jeopardy if "clearly expressed legislative intent" supports the imposition of cumulative punishments. *Hunter,* 459 U. S. at 368.

In Ohio, the relevant statutory language provides as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his

> conduct results in two or more offenses of the same or
> similar kind committed separately or with a separate
> animus as to each, the indictment of information may
> contain counts for all such offenses, and the defendant
> may be convicted of all of them.

Ohio Rev. Code  § 2941.25.

As provided by Ohio's multiple count statute, *supra*, an Ohio trial court may convict and sentence an individual for more than one offense arising from the same conduct so long as the statutory elements of those offenses considered in the abstract do not "correspond to such a degree that the commission of one crime will result in the commission of the other."  *State v. Rance,* 710 N.E.2d 699, 704 (Ohio 1999).  When that test is satisfied, offenses are not of similar import for purposes of Section 2941.25 (A), and a defendant may be convicted of both.  *Id*.  If offenses are of similar import in accordance with this test, multiple punishments still may be permitted if the state court determines, based on the particular facts, that the offenses were committed separately or with a separate animus.  *Id.*

In Petitioner's case, the Ohio appellate court concluded that felonious assault and murder did not constitute allied offenses under *Rance*, as each required proof of an element absent from the other.  That court elaborated:

> Felony murder requires causing death while
> committing or attempting to commit a first or second
> degree offense of violence, whereas felonious assault
> requires knowingly causing serious physical harm to
> another or knowingly causing physical harm to another

> by means of a deadly weapon.  *See* [Ohio Rev. Code §§]
> 2903.02(B); [ ] 2903.11(A)(1); [ ] 2903.11(A)(2).
> Comparing the elements of these offense[s] <u>in the</u>
> <u>abstract</u>, one can commit a felony murder without
> committing either type of felonious assault, and vice
> versa.  Therefore, felony murder and felonious assault
> are not allied offenses of similar import.  (citations
> omitted).  Because the offenses are not allied offenses of
> similar import, multiple convictions were permitted.

*Jones*, 2007 WL 706632, at *2-*3.  (Doc. #7, Exh. 10 at 5-6) (emphasis in original).

Applying the applicable law to the facts of Petitioner's case, this Court also

concludes that Jones' conviction did not violate the Double Jeopardy Clause,

because Ohio's multiple count statute clearly contemplates that multiple charges

and punishments may be imposed for the same course of conduct.  Petitioner has

not demonstrated that the Ohio appellate court's rejection of his "allied offenses"

claim as to the felony murder and felonious assault charges against him

constituted an unreasonable application of clearly established United States

Supreme Court law or an unreasonable determination of the facts.  Petitioner

therefore is not entitled to habeas corpus relief with respect to Ground Two as set

forth in his petition.

### Grounds 4 & 3 - Ineffective Assistance re Omission of Jones' Testimony

In Ground Four of his habeas petition, Jones claims that his rights to

effective assistance of counsel, due process, and a fair trial were violated when

his trial attorney "abrogated" Jones' right to testify on his own behalf at trial.

(Doc. #2 at 10). Building on that alleged deficiency of trial counsel, Ground Three of Jones' petition can be read to suggest a related claim of ineffective assistance of appellate counsel – *i.e.*, that Jones' appellate counsel provided deficient representation by failing to pursue an appeal based on trial counsel's alleged ineffectiveness in that regard. (Doc. #2 at 9; *see also* Doc. #17 at 9 ("Jones' appellate counsel . . . failed to raise Jones' constitutional right to testify on his own behalf")). Respondent counters that such claim has been waived as to Petitioner's trial counsel, and lacks merit as to his appellate counsel. (Doc. #14 at 18-19). Given the intertwined nature of these claims, this Court will address them together.

Confronted with Jones's argument that his appellate counsel was ineffective for failing to raise trial counsel's alleged deficiency in preventing Jones from testifying, the Ohio Court of Appeals considering Jones' motion to reopen his direct appeal noted that Petitioner's allegation in that regard relied on "facts that are outside the trial record, such as the conversation between Jones and his attorney concerning his desire to testify." (Doc. #7, Exh. 17 at 3). Further noting that "when an alleged error requires the presentation of evidence outside the record, it must be raised in a petition for post-conviction relief rather than on direct appeal," the state appellate court rejected that claim. (*Id.* at 3-4).

Consistent with the state appellate court's determination on Jones' motion

to reopen, Ohio law does recognize that a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21(A) is the appropriate remedy when "allegations of ineffectiveness are based on facts not appearing in the record." *State v. Cooperrider*, 448 N.E.2d 452, 454 (Ohio 1983).  Because the allegation that trial counsel suppressed Jones' testimony relies on evidence outside the trial record and thus would have entitled the state court to decline to address that issue on Jones' direct appeal, Jones' appellate counsel cannot have performed deficiently by failing to raise that issue on his direct appeal.[6]  Any Ground Three ineffective assistance of appellate counsel claim premised on appellate counsel's failure to raise the exclusion of Jones' testimony thus lacks merit.

Although Jones' state court remedy for trial counsel's alleged deficiency in this regard would be via a post-conviction petition, the Ohio legislature has established deadlines for post-conviction petitions, requiring that they be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction." Ohio Rev. Code § 2953.21(A)(2).  Petitioner Jones did not do so within that time,

---

[6]Petitioner's reply raises two additional bases for his claim that appellate counsel's performance was deficient, alleging that appellate counsel "lie[d] to the appellate court [about] sen[ding] Jones a copy of the transcripts" and "tried to prevent [Jones] from timely filing to the Ohio Supreme Court by delaying Jones' receipt of the appellate court's decision."  (Doc. #17 at 9).  Aside from the fact that Respondent was denied an opportunity to respond to these new assertions not included in the Petition, the Court also notes that these allegations, too, rely on facts that do not appear within the trial record, and thus suffer from the same infirmity that dooms Petitioner's ineffectiveness claim relative to his omitted trial testimony.

and thus committed a procedural default. Notwithstanding such a default, an Ohio court may consider a post-conviction petition filed after the 180-day deadline has expired if (1) the petitioner shows that he "was unavoidably prevented from discovery of the facts upon which he must rely to present the claims for relief" or "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right," and (2) the petitioner shows "by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found him guilty of the offense of which he was convicted." Ohio Rev. Code § 2953.23.

As Respondent aptly notes, this Court previously held that requiring Petitioner "to return to the state courts to file an untimely [post-conviction] petition would be futile," as this record "contains no indication" that Section 2953.23's "very narrow grounds" for excusing untimely petitions would apply to this Petitioner's failure to file a timely § 2953.21 action. (*See* Doc. #11 at 3-4). Although Petitioner asserts in his reply that he "was prejudiced" by appellate counsel's alleged deficiencies (Doc. #17 at 10), he has not shown by "clear convincing evidence" that he would not have been convicted but for those deficiencies. *See* Ohio Rev. Code § 2953.23. Neither can Petitioner demonstrate that he was unaware of trial counsel's alleged "abrogation" of his right to testify

before the time for filing a post-conviction petition lapsed, or that his claim in that regard is based on a right newly-recognized by the Supreme Court. *See id*.

Having failed to satisfy Ohio's established standard for considering an untimely post-conviction petition, Petitioner has no remedy available with respect to his trial counsel's alleged "abrogation" of his right to testify. Petitioner's failure to timely file for post-conviction relief effectively denied Ohio's highest court an opportunity to correct the constitutional error he alleges here, and Petitioner now is foreclosed from doing so.  He also has established neither cause for this procedural default nor his actual innocence.  Absent such a showing, Petitioner's Ground Four claim of ineffective assistance of trial counsel in this regard has been waived for federal habeas purposes.

**<u>Grounds 5 & 3 - Ineffective Assistance re Self-Defense Instruction</u>**

Petitioner asserts as Ground Five in support of habeas relief that his trial counsel was constitutionally ineffective for failing to make a timely request for a self-defense or "defense of others" jury instruction.  (Doc. #2 at 16).  Ground Three again can be read to suggest a related claim of ineffective assistance of appellate counsel – *i.e.*, that Jones' appellate counsel also was constitutionally ineffective for not properly pursuing his trial counsel's alleged ineffectiveness in that regard as a claim on direct appeal.  (Doc. #2 at 9; *see* Doc. #17 at 9). Respondent, however, urges that Petitioner procedurally defaulted any claim of

ineffective assistance of trial counsel by failing to raise that claim on direct appeal, and that appellate counsel's purported ineffectiveness in failing to raise that claim is without merit and does not constitute cause for the procedural default. (Doc. #14 at 20-21). Again, the Court will address these related claims together.

The record clearly demonstrates and Petitioner admits that Petitioner failed to include a claim for ineffective assistance of trial counsel in his brief on direct appeal. (*See* Doc. #7, Exh. 8; Doc. #2 at 16). Respondent correctly observes that such failure ordinarily would constitute a procedural default. (Doc. #14 at 20). But despite that omission, on Jones' application to reopen his appeal, the state court of appeals chose to address the merits of Jones' claim regarding trial counsel's belated jury instruction request. (*See* Doc. #7, Exh. 17 at 4-5). Contrary to Respondent's waiver argument, "the mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To constitute a waiver, then, "the last state court rendering a reasoned judgment on the matter must 'clearly and expressly' state that its judgment rests on such a procedural bar." *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

In considering Petitioner's ineffective assistance of trial counsel claim on his application to reopen his direct appeal, the Ohio Court of Appeals opted <u>not</u> to rely on the procedural bar of Jones' omission, and this Court therefore cannot presume that claim to be waived.  *See id.*  Proceeding to address that claim's merits, the state appellate court found as follows:

> Jones' argument overlooks the fact that the trial court fully considered whether to instruct the jury on self-defense.  In fact, counsel did request a self-defense instruction in writing before the court held the charging conference.  The court found that Jones was not entitled to the instruction because, by his own statement, he had been at fault in creating the situation that gave rise to his need to defend himself

> Moreover Jones' assertion that his request was made belatedly is not an indication of ineffective assistance of counsel.  Rather, counsel could have made a reasonable strategic decision not to present a claim of self-defense because Jones had admitted instigating the physical altercation by shoving the two victims to the floor.  Because the court fully considered the request for a self-defense instruction the timing of trial counsel's request was not prejudicial to Jones.  Therefore, appellate counsel was not ineffective in failing to raise trial counsel's failure to timely request a self-defense instruction.

(Doc. #7, Exh. 17 at 4-5).

A review of the record confirms the state appellate court's account of trial counsel's efforts to secure and the trial court's consideration of a self-defense instruction (*see* Trial Transcript, Vol. IV at 517, 521-22, 572), and thus contradicts

Petitioner's implication that the belatedness of trial counsel's request was the reason that such instruction was not given. Petitioner has not demonstrated that the appellate court's merits decision hinged on an unreasonable determination of the facts or of Supreme Court case law. As the Ohio Court of Appeals accurately determined that Petitioner was not prejudiced by the timing of his trial counsel's request because the trial court fully considered that request, Petitioner cannot prevail on his Ground Five claim that his trial counsel rendered constitutionally deficient representation. Given that trial counsel's performance was not constitutionally inadequate in that regard, appellate counsel's performance with respect to any potential claim of ineffective assistance of trial counsel on that basis also cannot give rise to habeas relief under Ground Three. Petitioner's ineffectiveness claims on this basis lack merit.

### Grounds 6 & 3 - *Blakely* Claim

Petitioner's sixth ground for relief contends that his sentence was based on "judicial factfindings" in violation of his Fifth, Sixth and Fourteenth Amendment rights. (Doc. #1 at 16). Once again, Ground Three implies that appellate counsel also may have been constitutionally deficient with respect to his handling of this possible ground for appeal. (Doc. #2 at 9; *see also* Doc. #17 at 9 ("Jones' appellate counsel . . . failed to raise constitutional issues concerning the illegal use and conviction of sentencing factors that were and still are at the forefront of debate

-31-

within the court system.")).  Respondent, addressing this claim as one premised

on the holdings of *Blakely v. Washington*[7] and its progeny, urges that such claim

lacks merit under existing law.  (Doc. #14 at 21-22).

     In *Blakely*, the United State Supreme Court held that a state court criminal

sentence violated the defendant's Sixth Amendment right to trial by jury when

that sentence exceeded the statutory maximum in reliance on aggravating factors

found by the trial judge.  *See* 542 U.S. 296.  Recognizing the possible implications

of that decision on Ohio's own approach to sentencing, the Ohio Supreme Court

responded by judicially severing, as unconstitutional, certain provisions of Ohio

statutory law that would require judicial findings to support any maximum, non-

minimum, or consecutive sentence.  *See State v. Foster*, 845 N.E.2d 470, 497-99

(2006), *cert. denied*, 549 U.S. 979 (2009).  That Court then "concluded that trial

courts have full discretion to impose a prison sentence within the statutory range

and are no longer required to make findings or give their reasons for imposing

maximum, consecutive, or more than the minimum sentences."  *Id.* at 498.

     The state trial court sentenced Jones on March 13, 2006 (*see* Doc. #14, Exh.

3), shortly after *Foster* was decided.  Because the transcript of Jones' sentencing

proceeding contains no apparent factual conclusions drawn by the trial court and

---

[7]542 U.S. 296 (2004).

offered to justify the sentence imposed (*see* Doc. #7, Exh. 17 at 3), no *Blakely*
concerns would appear to be invoked by that sentence.  Absent any indication
that Jones' sentence relied on improper judicial findings, this claim lacks
substantive merit.

As a secondary argument, Respondent also asserts that any *Blakely*-based
ground for habeas relief has been procedurally defaulted because Petitioner did
not raise such an issue on direct appeal.  (*See* Doc. #14 at 22).  Although the Court
need not address that cumulative basis for denying Petitioner relief, this Court
nonetheless notes that Respondent's additional argument appears to have some
merit.  (*See* Doc. #14, Exh. 8).  But to the extent that Ground Three of Jones'
petition can be read to suggest that his appellate counsel was ineffective due to
that failure to raise a *Blakely* issue on direct appeal, that claim also must fail.

Recognizing that the trial court possessed "greater sentencing discretion"
after *Foster*, and that "the trial court did not follow the portions of Ohio's
sentencing statutes that the Supreme Court declared unconstitutional," the Ohio
Court of Appeals was "unpersuaded that reopening Jones' appeal, reversing his
sentence, and remanding for resentencing would result in any benefit to him,"
and "thus f[ou]nd no ineffective assistance of appellate counsel."  *Jones*, No.
21522 at 3.  (Doc. #7, Exh. 17 at 3).  Having failed to demonstrate that the state
court's rejection of his ineffective assistance of appellate counsel claim involved

an unreasonable application of Supreme Court law or the facts of his case,

Petitioner cannot prevail on such a claim.

### Grounds 7, 8 & 3 - Length of Sentence Claims

The final two grounds asserted in Jones' petition also articulate related

sentencing arguments.  In Ground Seven, Petitioner argues that the trial court

violated his rights to due process and equal protection "by imposing consecutive

terms of incarceration" without statutory authority.  (Doc. #2 at 17).  Similarly, he

asserts in Ground Eight that his sentence exceeded the maximum penalty

available pursuant to statute at the time of his offense, in violation of the *Ex Post*

*Facto* Clause.  (*Id.*).  Although he concedes that he did not raise these claims on

direct appeal or via post-conviction petition, Petitioner suggests that such

omissions were attributable to "ineffective assistance of appellate counsel" (*id.*),

again implicating Ground Three.  (Doc. #2 at 9; Doc. #17 at 9).  Respondent,

however, urges that such claims are both procedurally defaulted and without

merit.  (Doc. #14 at 22-28).

As he admits (Doc. #2 at 17), Petitioner failed on direct appeal to argue

either that the trial court lacked authority to impose consecutive sentences

(Ground Seven), or that his sentence violated the *Ex Post Facto* Clause (Ground

Eight).  (*See* Doc. #14 at Exh. 8).  He therefore has procedurally defaulted both

such claims, absent cause or a showing of actual innocence.  *See Murray*, 477 U.S.

at 485.

Ineffective assistance of counsel may serve as cause to excuse a procedural default, *see id.* at 488, unless it too is procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Although Jones did apply to reopen his appeal based on ineffective assistance of appellate counsel, he did not include a claim that counsel was deficient for failing to present the issues that constitute Grounds Seven and Eight of his petition. (*See* Doc. #14, Exh. 15). Because Ohio law does not permit successive applications for reopening an appeal, *see, e.g., State v. Twyford*, 833 N.E.2d 289, 290 (Ohio 2005); *State v. Slagle*, 779 N.E.2d 1041, 1042 (Ohio 2002), Jones has no means remaining by which to raise an ineffective assistance of appellate counsel claim before the Ohio courts based on those omissions.

As Jones committed a procedural default with respect to any ineffective assistance of appellate counsel claims on these bases, any supposed deficiency of appellate counsel may serve neither as cause for the procedural default of his seventh and eighth grounds for relief, nor as an independent ground for relief under Ground Three. Although Petitioner subsequently did present to the Ohio Supreme Court the claims he now asserts in Grounds Seven and Eight here (*see* Doc. #7, Exh. 19), his belated attempt to introduce those claims via appeal from the denial of his application for reopening does not cure his earlier procedural

default.  Under Ohio law, a claim not raised in the Ohio Court of Appeals will

not be considered by the Ohio Supreme Court.  *See* Ohio CONST. art. IV, § 2(B)(2);

*Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th  Cir.), *cert. denied,* 474 U.S. 831 (1985);

*State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein),

*vacated on other grounds,* 438 U.S. 911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352

(Ohio 1971).  Indeed, the Ohio Supreme Court declined to consider those claims

in Petitioner's case.  (*See* Doc. #14, Exh. 20).  Since Jones has not demonstrated

cause for the procedural default of his seventh and eighth grounds for relief,

established his actual innocence, or preserved a claim of ineffective assistance of

appellate counsel with respect to those grounds, such claims have been waived.

In light of the Court's conclusion to that effect, this Court declines to

address the substantive merit of Petitioner's procedurally defaulted claims on

these issues.

### Certificate Of Appealability

Before Jones may appeal a denial of his habeas petition, he must first

obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).

To obtain a certificate of appealability, a habeas petitioner must make a

substantial showing of the denial of a constitutional right.  *Id*.; *see Miller-El v.

Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L. Ed.2d 931 (2003).  If a habeas

petition is rejected on procedural grounds without reaching the merits of the

petitioner's claims, the petitioner obtains a certificate of appealability by demonstrating that reasonable jurists would find it debatable whether (1) the petitioner has stated a valid constitutional claim and (2) the District Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

For the reasons stated above, reasonable jurists could not debate that Jones' grounds for relief set forth in his Petition are either procedurally defaulted or without merit. Consequently, a certificate of appealability should not issue.

**IT THEREFORE IS RECOMMENDED THAT**:

1.   Petitioner Steven C. Jones' petition for a writ of habeas corpus (Doc. #2) be DENIED;

2.   A certificate of appealability under 28 U.S.C. § 2253(c) not issue, and;

3.   This case be TERMINATED on the docket of this Court.

November 23, 2010                             s/Sharon L. Ovington
                                               Sharon L. Ovington
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).